ATTORNEYS FOR APPELLANT
David W. Stone IV
Anderson, Indiana

Troy Rivera
Bloomington, Indiana

ATTORNEYS FOR APPELLEE AFFIRMATIVE INSURANCE
COMPANY
Robert R. Foos, Jr.
Indianapolis, Indiana



FILED
Oct 30 2009, 12:22 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S05-0904-CV-00150

EZRA BRADSHAW,

*Appellant (Plaintiff below),*

v.

GARY CHANDLER AND
AFFIRMATIVE INSURANCE COMPANY,

*Appellees (Defendants below).*

Appeal from the Marion Superior Court, No. 49D01-0402-CT-000219
The Honorable David A. Shaheed, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-0806-CV-00363

**October 30, 2009**

**Shepard, Chief Justice.**

A provision of the automobile insurance policy at issue here precludes any recovery under its uninsured motorist provisions unless the proceeding commences within two years after the accident. Injured driver Bradshaw first sued driver Chandler and Bradshaw's insurance company mentioning only his policy's underinsured motorist provisions. More than two years after the accident, Bradshaw learned that Chandler was excluded from the insurance policy on

the vehicle he had been driving. Bradshaw amended his complaint to include his policy's uninsured motorist coverage provisions. The parties ask us to determine whether bringing suit against Chandler and Bradshaw's insurance company under the underinsured motorist section of the policy met the policy's requirements. We hold that it did.

## Facts and Procedural History

In July 2003, Ezra Bradshaw was injured in an automobile accident with Gary Chandler. Bradshaw sued Chandler on February 4, 2004. He also named his own insurer, Affirmative Insurance Company, in case his injuries and damages exceeded Chandler's policy limits.[1] Bradshaw alleged, "[t]hat at the time of the collision, plaintiff was insured by defendant, Affirmative Insurance Company, under an Underinsured Motorist Coverage Endorsement, Policy No. INB74061220, with policy limits of $50,000.00." (App. at 17.)

The litigation proceeded to discovery. On March 22, 2004, Chandler's attorney sent a letter to Bradshaw's lawyer stating that the vehicle Chandler drove at the time of the accident was owned by Ali Ahmed and insured with a $100,000 policy, which he noted presumably made "the underinsured motorist claim against Affirmative Insurance Company moot." (App. at 133.) Seventeen months later, on August 31, 2005, Chandler's attorney wrote again, enclosing the declaration sheet for the vehicle Chandler drove and saying that Chandler was an "EXCLUDED" driver from Ahmed's policy. (App. at 134.)[2]

---

[1] The named insured was Bradshaw's mother Clara Jones, but Bradshaw apparently was covered under the policy's provision that included any person using the covered vehicle with her permission. (App. at 27, 30.)

[2] This letter and declaration sheet are not part of the record. In a letter responding to Chandler's attorney, Bradshaw's lawyer Betsy Greene lamented, understandably, "Are you now stating that after 18 months of defending this case there is no coverage under the American Service Insurance policy?" (App. at 134.) American Services Insurance Company, the insurer of the vehicle Chandler drove, filed for declaratory relief in another court. On August 8, 2007, Judge Robyn Moberly held that no coverage existed under American's policy for Bradshaw's claim and that American did not have a duty to defend the action brought against Chandler. (App. at 138.)

On April 25, 2006, Bradshaw sought leave to amend his complaint to add the uninsured motorist coverage to a statement describing his policy with Affirmative, invoking Trial Rule 15(C). The court granted this motion. Affirmative filed for summary judgment, arguing that Bradshaw had first presented a potential claim for uninsured motorist coverage more than three years after the accident. It argued that this delay barred any coverage because Part II of the policy, which delineates coverage for uninsured motorist coverage, states: "This policy does not apply . . . to any suit action or arbitration proceedings recovery under this section unless commencing within two (2) years after the date of the accident." (App. at 33.)

Resisting Affirmative's motion, Bradshaw argued that under Trial Rule 15(C) his amended complaint related back to the date of his initial claim so the suit was not excluded and that his initial complaint gave Affirmative sufficient notice to meet the policy's requirements. (App. at 116–24.) The court granted Affirmative's motion, without findings.

Bradshaw appealed the order, and the Court of Appeals affirmed, rejecting Bradshaw's arguments based on Rule 15(C), the discovery rule, and adhesion contract grounds. Bradshaw v. Chandler, 900 N.E.2d 510 (Ind. Ct. App. 2008) (table). We granted transfer. ___ N.E.2d ___ (Ind. 2009) (table).

## Standard of Review

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C).

> We liberally construe all designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred.

3

Hagerman Constr. Corp. v. Long Elec. Co., 741 N.E.2d 390, 392 (Ind. Ct. App. 2000). The interpretation of an insurance policy presents a question of law and is thus appropriate for summary judgment. Wagner v. Yates, 912 N.E.2d 805 (Ind. 2009).

## I.      General Law of Policy Provisions

Contracts of insurance are governed by the same rules of construction as other contracts. Allgood v. Meridian Sec. Ins. Co., 836 N.E.2d 243 (Ind. 2005). In the absence of ambiguity, their words are given their ordinary meaning. Auto-Owners Ins. Co. v. Harvey, 842 N.E.2d 1279 (Ind. 2006).

We interpret policy terms "from the perspective of an ordinary policyholder of average intelligence." Allgood, 836 N.E.2d at 246–47 (quoting Burkett v. Am. Family Ins. Group, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000)). Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, we construe insurance policies strictly against the insurer. See Fidelity and Deposit Co. of Md. v. Pettis Dry Goods Co., 207 Ind. 38, 42, 190 N.E. 63, 65 (1934) ("any doubts or ambiguities must be resolved most strongly against" the insurer). This is particularly the case where a policy excludes coverage. Am. States Ins. Co. v. Kiger, 662 N.E.2d 945 (Ind. 1996). At the same time, interpretation should harmonize the policy's provisions rather than place its provisions in conflict. Allgood, 836 N.E.2d at 247.

Strict construction against the insurer derives from the disparity in bargaining power characteristic of parties to insurance contracts. Wagner, 912 N.E.2d at 810. "The insurance companies write the policies; we buy their forms or we do not buy insurance." Id. at 811 (quoting Kiger, 662 N.E.2d at 947). Nevertheless, we enforce limits on coverage where the policy unambiguously favors the insurer's interpretation. See Allgood, 836 N.E.2d at 246–48 (holding that "loss" did not include coverage for diminution of value where automobile was repaired despite differences among courts' interpretations of similar or identical provisions).

4

Likewise, we enforce contractual provisions that shorten the time to commence suit as long as a reasonable time is afforded, except where there is fraud, duress, and the like. New Welton Homes v. Eckman, 830 N.E.2d 32, 35 (Ind. 2005); see Caywood v. Supreme Lodge of Knights & Ladies of Honor, 171 Ind. 410, 412, 86 N.E. 482, 483 (1908) ("It is settled by the great weight of authorities that a provision in an insurance policy limiting the time in which suit may be brought thereon to a period less than that fixed by [the] statute of limitations is binding, unless it contravenes a statute.") (citing Riddlesbarger v. Hartford Ins. Co., 74 U.S. (7 Wall.) 386 (1868)).

While contractual limitations shortening the time to commence suit are not favored, they do "protect insurers from policy holders who voice no claim until the year has long since expired, promote early notification while evidence is available, and provide carriers with a basis for forming business judgments concerning claim reserves and premium rates." Summers v. Auto-Owners Ins. Co., 719 N.E.2d 412, 414 (Ind. Ct. App. 1999). Where as here the insurance company is a named defendant in a suit commencing within months of the accident, unreasonable delay in pursuing a claim is clearly not a concern. [3]

Affirmative suggests that Bradshaw's filing suit did not adequately prevent unreasonable delay in enforcing or pursuing the claim because its attorneys would have approached an uninsured motorist claim more thoroughly than the underinsured claim. (Oral Argument.) Affirmative insists on reading the time limitation exclusion under the uninsured provisions to require Bradshaw to state that he is suing under the uninsured provision within two years of the accident. (Oral Argument: "any claim made under this portion of the policy must be filed within two years of the date of the accident.") It also asserts that the policy requires notifying Affirmative of a potential uninsured motorist claim within two years. (Appellee's Br. at 4–6.)

---

[3] The statutory limitation period applicable to claims against insurers arising from uninsured motorist benefits provided in an insurance contract is the six-year limitation applicable to written contract actions, not the two-year limitation period applicable to personal injury actions. Ayers v. State Farm Mut. Auto Ins. Co., 558 N.E.2d 831, 833 (Ind. Ct. App. 1990) (deciding under the former ten-year statute of limitation for contract actions).

5

## II.        The Policy at Issue Here

The <u>uninsured</u> motorist coverage section of the Affirmative policy held by Bradshaw says the coverage does not apply to any suit "unless commencing within two (2) years of the accident." (App. at 33.) In contrast, the <u>underinsured</u> provisions say there is no coverage "unless the company received actual written notice of said claim within two (2) years of the date of the accident." (App. at 35.) The uninsured provisions do not appear to require that Bradshaw even name Affirmative in the action, much less delineate explicitly at the outset that his claim is for uninsured coverage. Taken together, we read these provisions to mean that, all other requirements being met, if Bradshaw had been <u>less</u> specific in his initial complaint and excluded the phrase "under an <u>Under</u>insured Motorist Coverage Endorsement," Bradshaw would not have had to amend his complaint at all. (App. at 17.)

If we agreed with Affirmative that its insured should have specified at the outset that he was suing for uninsured coverage, future insureds in similar circumstances would doubtless be prompted to include a claim against the insured's carrier for both uninsured and underinsured coverage, and Affirmative would lose much of its ability to differentiate between an underinsured and an uninsured case at its commencement. Indeed, at oral argument, counsel stated that this double-barreled approach has already been taken by Bradshaw's trial lawyer in similar cases. We see requiring insured plaintiffs with similar policy provisions to assert both underinsured and uninsured claims against their insurers as likely adding paperwork of little value to litigation of this sort.

An insurer might contractually require an insured to delineate specifically the provision under which he is suing, as Affirmative asserts its policy does. Strictly construed, this policy does not lend itself to an interpretation that precludes Bradshaw's uninsured motorist claim under these circumstances. Bradshaw commenced his suit within the two-year limitation, so the policy does not exclude coverage.

Bradshaw relies extensively on Trial Rule 15(C) for his argument, assuming Affirmative's contract interpretation and arguing that the rule renders the amended complaint timely. (Appellant's Br. at 6–8.) Trial Rule 15(C) states "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Ind. Tr. Rule 15(C). Because we interpret the policy's requirements more broadly, Trial Rule 15(C) plays no role in determining whether Bradshaw meets them. While Rule 15 applies to amendments generally, Bradshaw hardly needs help from Rule 15(C) because his initial complaint met the limitation requirement of the policy by "commencing within two (2) years after the date of the accident." (App. at 33.) On the other hand, it was not error for the trial court to have granted Bradshaw's Rule 15(C) request as, by doing so, it established an orderly basis on which the uninsured motorist claim could proceed.

Alternatively, Affirmative argues that Bradshaw cannot claim uninsured motorist coverage because, though it excluded him, an insurance policy applied to the vehicle Chandler drove. (Appellee's Br. at 10–13.) Bradshaw argues that Affirmative waived this argument because it inadequately raised it at the trial court. (Reply Br. at 7.) Affirmative did not advance the argument in the motion for summary judgment, but it asserted it in the reply supporting summary judgment. (App. at 90–91, 202–03.) Because the trial court did not explicitly address this contention, we do not address Affirmative's argument on this point and leave it for the trial court to decide.

**Conclusion**

We reverse the trial court's grant of summary judgment to Affirmative Insurance.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.