SYKES, Circuit Judge,
dissenting.
I agree with my colleagues that the pollution exclusion in Federated’s 2001-2003 CGL policy bars coverage under that policy. I do not agree, however, that the Indiana Supreme Court’s decision in B & R Farm Services, Inc. v. Farm Bureau Mutual Insurance Co., 483 N.E.2d 1076 (Ind.1985), precludes coverage under Federated’s 2001-2002 umbrella policy. That policy provides additional insurance for losses covered under “[t]he ‘products-completed operations hazard’ anywhere in the world.” The policy defines the “products-completed operations hazard” as follows:
“Products-completed operations hazard” includes all “bodily injury” and “property damage” occurring away from premises you own or rent and arising out of “your product” or “your work” except:
a. products that are still in your physical possession; or
b. work that has not yet been completed or abandoned.
The loss at issue here arose out of a 1996 gasoline leak at the insured’s gas station. Gasoline escaped from MDK’s underground storage tank and migrated into a nearby residential neighborhood, contaminating the groundwater and causing property damage and bodily injury to the homeowners and their families. The homeowners sued MDK in September 2002 (the Bowens class action); West Bend accepted the tender of defense and eventually settled the case for $4 million. West Bend then sued Federated and several other MDK insurers seeking to recoup some or all of its defense and settle *927 ment costs via theories of subrogation, contribution, and estoppel. The district court entered summary judgment for the defendant insurers. Only West Bend and Federated remain in the case on appeal.
The parties agree (and I do, too) that the loss underlying the Boivens action does not come within the “completed operations” aspect of the products-completed operations hazard in the umbrella policy; the limitations on coverage for “your work” are therefore not implicated here. If this coverage applies at all, it can only be by virtue of the “products hazard” language. Based on that language, I think the loss underlying the Bowens action falls comfortably within the policy’s coverage.
The umbrella policy defines “your product” as follows:
“Your product” means:
a. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed by:
(1) you;
(2) others trading under your name; or
(3) a person or organization whose business or assets you have acquired; and
b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
By this specific definition of “your product,” read together with the pertinent part of the general definition of the products-completed operations hazard, the umbrella policy shifts the following risk from MDK to Federated: the risk of loss from (1) “bodily injury” or “property damage”; (2) occurring “away from [the insured’s] premises”; and (3) “arising out of ‘your product,’ ” defined as “any goods or products ... sold, handled, distributed or disposed by” the insured, provided that the product was not in the insured’s possession at the time of the loss. These criteria for coverage under the “products hazard” are satisfied here. The loss at issue stemmed from “bodily injury” and “property damage” occurring away from MDK’s gas station and arising out of MDK’s “product”— that is, its gasoline — which was not in MDK’s possession at the time of the loss. On the face of it, the claim should be covered.
My colleagues read the B & R Farm, Services case to preclude coverage under the products-completed operations hazard. As they have acknowledged, however, there are a couple of reasons to distinguish that case. First, B & R Farm, Services concerned an exclusion in a CGL policy, not (as here) a coverage-granting provision. This distinction is important in insurance law. Generally speaking, coverage-granting language in an insurance policy is construed from the standpoint of an average policyholder and read broadly in favor of coverage; any doubts or ambiguities about coverage are resolved against the insurer. Exclusions, on the other hand, are generally read more narrowly; ambiguities in an exclusion are construed strictly against the insurer. Indiana follows these interpretive rules. See, e.g., Bradshaw v. Chandler, 916 N.E.2d 163, 166 (Ind.2009).
Second, and more importantly, the exclusion in B & R Farm Services contained limiting language not present in the coverage-granting provision at issue here. The produets-hazard provision in B & R Farm Services excluded bodily injury or property damage arising out of the insured’s products but “only if the bodily injury or property damage occurs away from the [insured’s] premises ... and after physical possession of such products has been relinquished to others.” 483 N.E.2d at 1077 (emphasis added). As my colleagues have explained, the decision in B & R Farm Services hinged specifically on the policy’s use of the language I have italicized, which *928 narrowed the scope of the products-hazard exclusion. The Indiana Supreme Court read this language to require a volitional “act of relinquishment” and held that the products-hazard exclusion applied only to “claims arising from the placement of defective goods into the stream of commerce.” Id. The loss at issue in B & R Farm Services arose out of a fertilizer leak at the insured’s manufacturing plant that contaminated a nearby creek. Because this loss did not arise out of the insured’s placement of defective goods into the stream of commerce, the court held that the exclusion did not apply. Id. In other words, the state high court read the exclusion narrowly and held the claim was covered.
Unlike my colleagues, I think these differences combine to make B & R Farm Services inapplicable here. B & R Farm Services involved the interpretation of limiting language in a products-hazard exclusion; we are not required to interpret coverage-granting language in exactly the same way, especially where, as here, the products-hazard provision does not contain the same or similar limiting language. More significantly, I do not read B & R Farm Services as a definitive statement of Indiana insurance law about the proper interpretation of products-hazard coverage in CGL policies as a general matter. The court’s opinion was very brief and its holding was underreasoned. The court focused solely on the provision’s requirement of product “relinquishment” and concluded without further analysis that the exclusion only applied to claims arising from the insured’s placement of defective products into the stream of commerce. Because this conclusion came with so little explanation, I hesitate to extrapolate from B & R Farm Services a general rule of Indiana insurance law that a products-hazard provision in a CGL policy covers “only knowingly completed market transactions and abandoned product,” as my colleagues have concluded.[1] Maj. op. at 926.
*929 Much modern insurance-coverage litigation interpreting the products-completed operations hazard in the standard-form CGL policy occurs in the context of disputes over the policy’s business-risk exclusions — more specifically, the so-called “your product” and “your work” exclusions, which typically exclude coverage for damage to the insured’s own “work” or “product” wising out of the products-completed operations hazard. See generally 20 Eric Mills Holmes, Holmes’ Appleman on InsukanCE § 129.1 (2d ed.2002) (discussing the products-eompleted operations hazard); 21 id. § 132.9[C], [D] (discussing the business-risk exclusions). Coverage claims over these clauses proliferate, the interplay between the exclusions and the covered hazard creates difficult interpretive questions, and the caselaw in this area is not always consistent. This is another reason not to read B & R Farm Services for more than it’s worth. I would not extend the case beyond its specific context.[2]
In short, because B & R Farm Services is distinguishable, I would not apply its “placement in the stream of commerce” gloss here. Based on the products-hazard policy language at issue in this case, the loss associated with the Bowens action is a covered loss. Federated has also raised the known-loss doctrine as a possible alternative barrier to coverage under the umbrella policy. This common-law doctrine bars coverage if the insured had “actual knowledge that a loss has occurred, is occurring, or is substantially certain to occur on or before the effective date of the policy.” Gen. Housewares Corp. v. Nat’l Surety Corp., 741 N.E.2d 408, 414 (Ind.Ct.App.2000). The known-loss doctrine is premised on the fortuity principle that is inherent in all insurance, id. at 414-15, and the burden of proving that the loss was known “is on the party seeking to avoid coverage,” id. at 414. This “is ordinarily a question of fact.” Id. at 413-14.
As I read the record in this case, there is conflicting evidence on the question whether MDK knew the loss at issue in the Bowens action had occurred, was occurring, or was substantially certain to occur before the umbrella policy’s effective date. I would remand for resolution of *930 that question. Accordingly, for all the foregoing reasons, I respectfully dissent.

. In arriving at this interpretation, my colleagues have engrafted the limitations applicable to the “completed operations” hazard onto the “products” hazard. I think this is a mistake. A CGL policy is, as its name implies, a general-liability policy that insurers sell to a wide variety of commercial insureds. The products-completed operations hazard in a standard-form CGL policy provides coverage against two kinds of hazards: the "products” hazard and the “completed operations" hazard. Although they are lumped together in the standard form, they are in fact distinct types of coverage. (It would be easier to see the distinction if the punctuation were more precise: "products/completed operations hazard” is clearer.) See generally 20 Eric Mills Holmes, Holmes’ Appleman on Insurance § 129.1 (2d ed.2002) (discussing the products-completed operations hazard). These policies are written on the standard form but are sometimes — perhaps often — adapted to particular customers' needs and circumstances. In general, however, the “products hazard” part of the "products-completed operations hazard” covers manufacturers, distributors, and sellers of products; the "your product” definition in the policy modifies the "products hazard” coverage. The “completed operations” hazard typically covers construction contractors and the like, who routinely conduct their "operations” away from their primary premises; the "your work” limitations in the policy modify the "completed operations” hazard.
Importantly, the "completed or abandoned” limiting language in this coverage has nothing to do with the "products hazard.” These limitations relate instead to the "completed operations” hazard, which as I have noted is typically for construction contractors whose business involves not "products” but "work.” This distinction is clear from subsection (b) of the products-completed operations hazard provision, which excludes coverage for “work that has not yet been completed or abandoned.” This same limitation is not included in the "products hazard” part of the products-completed operations hazard; the only limitation appearing there is for "products that are still in your physical possession.” Thus, the “completed or abandoned” limitations in the products-completed opera *929 tions hazard are relevant only to the scope of the “completed operations” hazard, which is not at issue here. This conclusion also flows from the policy’s description of when "your work” will be deemed "completed” and therefore covered under the "completed operations” hazard. This language is all about work performed by contractors; it has no application to the "products hazard” part of the products-completed operations hazard. By adopting a "completed market transaction and abandoned product” interpretation of the "products hazard” coverage, my colleagues have imported limitations that by their terms are applicable only to a different part of this coverage — the “completed operations” hazard.

. In this regard, I note that my colleagues’ interpretation of the "products hazard” amounts to more than just an application of B & R Farm Services — it is a fairly significant extension of the case. The Indiana Supreme Court did not say there must be a "completed market transaction” or "abandoned product” for this clause to apply. Instead, it said the exclusion before the court in that case — with its product "relinquishment” requirement'— excluded only claims "arising from the placement of defective goods into the stream of commerce by the insured.” B & R Farm Services, 483 N.E.2d at 1077. Nothing in this formulation requires either a "completed market transaction” or "abandoned product.” I can think of situations in which a manufacturer, distributor, or seller of a product might be sued for damages arising out of bodily injury or property damage from its product where there is neither a “completed market transaction” nor “abandoned product.” The "products hazard” coverage on its face would apply but for the additional limitations imported here from the "completed operations” hazard.