GRANGE MUTUAL CASUALTY
COMPANY, Appellant–
Defendant,

v.

WEST BEND MUTUAL INSURANCE
COMPANY, Appellee–Plaintiff.

No. 29A02–1008–PL–965.

Court of Appeals of Indiana.

March 15, 2011.

Carolyn M. Trier, Trier Law Office, Fort Wayne, IN, Attorney for Appellant.

Keith A. Kinney, Carolyn A. Miller, Hill Fulwider McDowell Funk & Matthews, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Grange Mutual Casualty Company (Grange) appeals the trial court's entry of summary judgment in favor of West Bend Mutual Insurance Company (West Bend) on the parties' cross claims for declaratory judgment in an insurance coverage dispute.

We affirm in part, reverse in part, and remand.

The undisputed facts in this case are not complicated. Cincinnati Insurance Com-

pany's (Cincinnati) insured, the Sullivan Corporation (Sullivan), was the general contractor for a project at the Sycamore School in Indianapolis. Sullivan entered into a subcontract with McCurdy Mechanical (McCurdy), pursuant to which McCurdy was to install the sanitary sewer, domestic water and storm piping, roof drains, plumbing fixtures, and the HVAC system at the school. McCurdy completed its work at the school on or before May 3, 2005.

On June 23, 2006, the school experienced significant water damage. It was later discovered that the flooding was due to a fractured storm drain pipe that had been caused by McCurdy during the winter or spring of 2005. As a result of the damaged drain pipe and subsequent flooding, Cincinnati paid $146,403.06 to indemnify Sullivan for the damages incurred by the school. Cincinnati then initiated a subrogation claim against McCurdy and its insurers, West Bend and Grange, on June 20, 2007. Further, Cincinnati sought a declaratory judgment as to whether West Bend's policy with McCurdy, Grange's policy with McCurdy, or both provided coverage for the damages at the school.

West Bend provided commercial general liability (CGL) insurance to McCurdy from May 23, 2004 until May 23, 2005. Grange was McCurdy's CGL insurance carrier from May 23, 2005 to May 23, 2007. Thus, West Bend insured McCurdy at the time McCurdy performed work at the school and damaged the drain pipe, and Grange insured McCurdy at the time of the flooding, when McCurdy no longer had a presence at the school.

West Bend and Grange jointly settled Cincinnati's claim against McCurdy[1] and

agreed to litigate the coverage dispute that existed between them. In March 2010, West Bend filed a cross claim for declaratory judgment against Grange seeking a "determination of the rights and obligations of West Bend under its policy of insurance issued to McCurdy Mechanical, including whether coverage exists under West Bend's policy of insurance, Grange Mutual's policy of insurance, or a combination of both." *Appellant's Appendix* at 62–63. Shortly thereafter, Grange filed a similar cross claim for declaratory judgment.

West Bend and Grange subsequently filed competing motions for summary judgment on June 25, 2010, with accompanying memoranda. Following a hearing, the trial court issued an order on July 30, 2010, denying Grange's motion for summary judgment and granting West Bend's motion for summary judgment. Grange now appeals that order.

As the parties recognize, this case is ripe for summary judgment because there are no genuine issues of material fact and the coverage dispute can be determined as a matter of law from an examination of the policies at issue. *See Bradshaw v. Chandler,* 916 N.E.2d 163, 166 (Ind.2009) ("interpretation of an insurance policy presents a question of law and is thus appropriate for summary judgment").

It is well established that contracts for insurance are subject to the same rules of interpretation as are other contracts. *See, e.g., Bradshaw v. Chandler,* 916 N.E.2d 163; *Allstate Ins. Co. v. Dana Corp.,* 759 N.E.2d 1049 (Ind.2001). In the absence of ambiguity, policy language is given its plain and ordinary

---

1. The settlement payment was for only the damages related to the flooding. This is because an earlier summary judgment ruling had determined that damages to repair the pipe could not be recovered by Cincinnati due to a waiver of subrogation clause contained in the subcontract between McCurdy and Cincinnati's insured, Sullivan.

meaning. *Bradshaw v. Chandler*, 916 N.E.2d 163. Here, the language of the relevant policy provisions is clear.

The provisions of the insurance policies at issue in this appeal are substantially similar. In fact, with respect to the relevant provisions, both policies provide:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage"[2] to which this insurance applies....

b. This insurance applies to ... "property damage" only if:

(1) The ... "property damage" is caused by an "occurrence"[3] that takes place in the "coverage territory"[4];

(2) The ... "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured ... and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the ... "property damage" had occurred, in whole or in part....

c. "[P]roperty damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred ..., includes any continuation, change or resumption of

that ... "property damage" after the end of the policy period.

*Appellant's Appendix* at 318 and 340.

Grange argues that the date of the occurrence, here the negligent fracturing of the storm drain pipe, determines coverage. Thus, Grange contends that West Bend's policy provides liability coverage for the water damage because the drain pipe was damaged during West Bend's policy period and that occurrence caused the later flooding. West Bend, on the other hand, asserts that there were two separate occurrences: 1) the broken pipe and 2) the flooding.

The parties incorrectly focus on the timing of the occurrence(s) in this case. Even assuming Grange is correct that there was only one "occurrence" here (i.e., McCurdy's breaking of the storm drain pipe), this fact is not determinative. With regard to an occurrence, the policies require merely that the occurrence takes place at a location within the coverage territory. Thus, the timing of the occurrence is not particularly relevant to the determination of coverage.

As the trial court indicated, the pertinent consideration is the timing of the property damage because the policies require that the damage occur during the policy period. In granting summary judgment in favor of West Bend, the trial court explained in part:

Both policies require that the property damage must occur during the policy

*Appellant's Appendix* at 316 and 354.

**2.** "Property Damage" is defined in the policies as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**3.** "Occurrence" is defined in the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 315 and 353.

**4.** "Coverage territory" includes, among other things, the United States of America.

period. West Bend argued that the property damage did not occur until the water flooded the school in June 2006, during Grange's policy coverage. Grange argued that the property damage was continuous and began when the pipe was damaged during West Bend's policy period.

The Court rules that the property damage was not continuous, and that the property damage occurred when the flooding took place in June 2006. Accordingly, Grange's liability policy covered the property damage and West Bend's policy did not.

*Appellant's Appendix* at 16. The trial court seemed to proceed under the theory that this was an either-or determination. It is not.

■ With respect to Grange, it cannot be disputed that significant property damage actually *occurred* during its policy period as a result of the flooding. Further, it has not been argued that prior to the commencement of Grange's policy period the insured was aware of the damage to the storm drain pipe that had been caused by McCurdy during West Bend's policy period. Applying the plain language of the insuring agreement, therefore, Grange's liability policy covered the property damage that resulted from the flood. Specifically, the fracturing of the pipe and resulting damage took place in the coverage territory, property damage (water damage) occurred during the policy period, and the insured did not have prior knowledge of any related property damage or occurrence. Thus, coverage under the Grange policy was triggered when the flooding occurred during its policy period, regardless of when the original negligence took place.

Coverage under Grange's policy, however, does not equate to lack of coverage under West Bend's policy. In support of

its argument against coverage, West Bend directs us to a Minnesota case, *Parr v. Gonzalez*, 669 N.W.2d 401 (Minn.Ct.App. 2003), and seizes on the following statement: "An occurrence takes place not when the policyholder engages in the wrongful act, 'but the time the complaining party was actually damaged.'" *Id.* at 406 (quoting *Singsaas v. Diederich*, 307 Minn. 153, 238 N.W.2d 878, 880 (1976)). Thus, West Bend argues that we should look to when the actual damage occurred, not the time of negligence. *See Great Lakes Chem. Corp. v. Int'l Surplus Lines Ins. Co.*, 638 N.E.2d 847, 854 (Ind.Ct.App.1994) ("the trigger for coverage is the time when the complaining party was damaged").

As expressed above, we agree that the time of the damage, as opposed to the time of the alleged negligent conduct that caused the damage, is the triggering event. We do not agree, however, that no damage occurred during West Bend's policy period to trigger coverage under its policy with McCurdy. Although the damages resulting from McCurdy's negligence became apparent only after they evolved over time, some damage clearly resulted when the drain pipe was fractured, which was within West Bend's policy period.

Further, the *Parr* case, which presents an analogous factual situation, does not counsel for the result argued by West Bend. In that case, the insured, a subcontractor hired to replace a roof, damaged a vent cap to the home's heating system. The subcontractor's negligence occurred in May 1999. In December 1999, the homeowners discovered substantial mold damage that had been caused by the obstructed vent pipe. The subcontractor's CGL insurer, Zurich, argued that the policy was not triggered by the subcontractor's actions because any damage to the home did not occur until after the policy expired in July 1999. Specifically, Zurich provided

evidence that the mold that resulted from the obstructed vent pipe could not have formed until after the homeowners began operating their furnace in the fall.

As in the instant case, the policy in *Parr* required that the property damage occur during the policy period. The *Parr* court held that regardless of when the negligence occurred, the relevant inquiry was when damage occurred. *Parr v. Gonzalez*, 669 N.W.2d 401. "Consequently, if damage occurs outside of the policy period, the policy does not provide coverage." *Id.* at 406. In concluding that the CGL policy had been triggered in May 1999, the court explained:

> Here, the undisputed facts show that the vent cap was damaged by the insured in May 1999, while the insured's policy with Zurich was still in effect.... [T]he policy was triggered because appellants sustained property damage during the policy period as a result of the insured's actions.
>
> Zurich argues that because the mold may not have developed until after the policy had expired there is no coverage. But when damages arise from discrete and identifiable events that occur within the policy period, the actual-injury trigger theory allows those policies on the risk at the point of initial damage to pay for all the damages that follow.

*Id.* at 406–07. Thus, the court held that Zurich was responsible for the "massive property damage that resulted from the obstructed vent pipe". *Id.* at 407.

In the instant case, the undisputed facts show that the storm drain pipe was damaged by McCurdy during the West Bend policy period. Further, West Bend's policy provides that this initial property damage "includes any continuation, change or resumption of that ... 'property damage' after the end of the policy period." *Appellant's Appendix* at 318. Pursuant to this provision, as well as for the reasons expressed in *Parr*, we hold that because the West Bend policy was triggered at the time McCurdy negligently fractured the drain pipe, the policy covers all damages that flowed from the original damage, including the extensive flood damage.

In sum, the undisputed facts establish that both policies were triggered in the instant case. The first policy, West Bend's, was triggered by the original fracturing of the storm drain pipe which resulted in immediate damage to the pipe and the subsequent flooding. The second policy, Grange's, was triggered by the flood damage that occurred during its policy period. Thus, both policies cover the flood damage at issue. *See Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049 (in the case of evolving damages that span over multiple policy periods, more than one policy may be triggered).[5]

---

5. The Dissent argues it is inconsistent to conclude that the West Bend policy covered all the damage that flowed from the original damage and conclude that the Grange policy also covered the flooding damage. We see nothing inconsistent in holding that two policies can be triggered to cover the same damage. To be sure, both policies at issue contain other insurance clauses addressing instances where two primary insurance policies cover the same loss. The determination of whether the Grange policy was triggered is not controlled by our determination of coverage under another policy. The Dissent would have us wholly ignore the express language of the Grange policy, which we will not do. *Cf. Parr v. Gonzalez*, 669 N.W.2d 401 (addressing coverage under only one policy); *Domtar, Inc., v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 733 (Minn.1997)) ("CGL policies come in many forms and it is a mistake to read our case law as if the scope of coverage has been resolved for all such policies, no matter what their language").

The policies at issue have similar other insurance clauses that provide for contribution by equal shares between primary insurers, such as here. "Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first." *Appellant's Appendix* at 333. On remand, therefore, the trial court is directed to apportion damages accordingly.

Judgment affirmed in part, reversed in part, and remanded.

MATHIAS, J., concurs.

MAY, J., dissents with separate opinion.

MAY, Judge, dissenting.

The majority determines damage to the storm drain pipe occurred during the West Bend policy period, and that damage "trigger[ed] coverage under its policy with McCurdy." (Op. at 596.) It then notes the West Bend policy provision that the initial property damage includes "any continuation, change, or resumption of that 'property damage' after the end of the policy period." (*Id.* at 597) (quoting Appellant's App. at 318). Finally, it holds that because the West Bend policy was triggered when the drain pipe was damaged, "the policy covers all damages that flowed from the original damage, including the extensive flood damage." (*Id.*)

I agree with the majority on all three counts. But the majority then reaches a conclusion I find inconsistent with that analysis, and I must therefore respectfully dissent.

After explicitly holding the West Bend policy *covers all damages* that flowed from the original damage, including the extensive flood damage, the majority then says the Grange policy also "cover[s] the flood damage at issue" (*id.* at 597), and instructs the trial court on remand to "apportion damages accordingly." (*Id.*)

There is nothing to "apportion." The majority is correct that the West Bend policy covers "all damages," and I would accordingly decline to hold there could be damages in addition to "all damages" or that any such additional damages could be assigned on remand to Grange.

My conclusion the Grange policy is not implicated is consistent with the *Parr* decision on which the majority relies. That court noted when damages arise, as they did here, from "discrete and identifiable events that occur within the policy period, the actual-injury trigger theory allows those policies on the risk at the point of initial damage *to pay for all the damages that follow.*" 669 N.W.2d at 406–07 (emphasis added) (citing *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 733 (Minn.1997)). The policy at issue in *Parr*, like the West Bend policy before us, provided for payment of damages that manifested themselves after the policy period. It defined "property damage" to include loss of use of property. "All such loss of use shall be deemed to occur at the time of the physical injury that caused it." *Id.* at 406.

In *Parr*, the policy covered Gonzalez from April 29, 1999, to July 31, 1999. While the policy was effect, Gonzalez damaged the vent cap on Parr's roof. In May, 1999, another contractor replaced the vent cap but installed a wrong-sized vent cap that resulted in a blockage of the vent pipe. After the policy period, Parr discovered large amounts of mold behind the walls, under the floors, and in the attic of the home. The damage was the result of excess condensation created by the obstructed vent pipe. The court found "the policy was triggered because [Parr] sustained property damage during the policy period as a result of [Gonzalez's] actions,"

and the policy provided coverage for the subsequent mold damage. *Id.*

In *Domtar,* on which the *Parr* court relied, the Minnesota Supreme Court noted "[i]t is inaccurate to conclude that a CGL insurer is *never* liable for damages occurring outside of the policy period." 563 N.W.2d at 733. Therefore, when an injury (there, environmental contamination) "arises from discrete and identifiable events, then the actual-injury trigger theory allows those policies on the risk at the point of initial contamination to pay for *all property damage that follows." Id.* (emphasis added). I believe "all" means "all," and I would accordingly reverse and direct summary judgment for Grange.