## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 12 2015, 10:09 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Edward P. Grimmer
Daniel A. Gohdes
Edward P. Grimmer, P.C.
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Paul B. Poracky
Koransky Bouwer and Poracky, P.C.
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bruce and Sybil Scheffer,

*Appellants-Plaintiffs,*

v.

Centier Bank,

*Appellee-Defendant.*

March 12, 2015

Court of Appeals Cause No. 45A03-1410-PL-367

Appeal from the Lake Superior Court
Cause No. 45D11-1212-PL-106

The Honorable Diane Kavadias Schneider, Judge

**Barnes, Judge.**

# Case Summary

Bruce and Sybil Scheffer appeal the trial court's denial of their motion for summary judgment and the trial court's grant of summary judgment in favor of Centier Bank ("Centier"). We affirm in part, reverse in part, and remand.

# Issues

The Scheffers raise three issues, which we consolidate and restate as:

> I. whether an affidavit designated by Centier was admissible; and
>
> II. whether the trial court properly granted Centier's cross-motion for summary judgment and denied the Scheffers' motion for summary judgment.

Centier raises one issue on cross-appeal, which we restate as whether it is entitled to an award of costs and attorney fees.

# Facts

In December 2012, the Scheffers filed a complaint against Centier Bank. The Scheffers alleged that a 1985 loan with Centier's predecessor, The First Bank of Whiting, for the purchase of residential real estate was secured by a mortgage on the property and four assignments of life insurance policies on the lives of Bruce and Sybil. The assignments each provide: "this assignment is for the sole purpose of using the policy as collateral security for existing or future loans made by the assignee to the owner." App. pp. 80, 81, 83, 84. The Scheffers

alleged that they satisfied the loan in December 2010 but that Centier refused to release the assignments of the life insurance policies.

[4] In its answer, Centier alleged that the assignments served as collateral for corporate debt of Scheffer, Inc., not a personal debt of the Scheffers, and that the Scheffers were sole shareholders of that company. Centier further alleged that Scheffer, Inc., exhausted a $1.65 million line of credit in 2009 and that an involuntary bankruptcy was filed against the company in 2010.

[5] The Scheffers filed a motion for summary judgment arguing that Centier was required to release the assignments of the life insurance policies. Among other evidence, the Scheffers designated their own affidavit, which alleged that, since 1985, they had owned, respectively, life insurance policies through United Farm Bureau Family Life Insurance Company. The Scheffers also alleged that they assigned the life insurance policies as collateral on a promissory note and mortgage on their residential property in 1985. The Scheffers contended that neither of them had given "any signed, written guarantee or undertaken any personal liability to Centier Bank on the corporate debt of Scheffer, Inc. to Centier Bank." *Id.* at 77. The Scheffers did not designate any documentary evidence showing a 1985 residential mortgage or loan with Centier or its predecessor and did not designate the life insurance policies or documentary evidence showing the owners of the policies.

[6] Centier responded to the Scheffers' motion for summary judgment and filed a cross-motion for summary judgment. Centier argued that the Scheffers' claim

failed because the assignments related to a business loan, not a residential loan. Centier designated an affidavit by Brian Miller, a vice-president and "workout officer" for Centier Bank. *Id.* at 136. According to Miller, Centier did not have a loan or mortgage on the Scheffers' residence until 2002 and that loan was paid off in 2010. Prior to 2002, the Scheffers had a mortgage on the property through a different bank, American Trust & Savings Bank. According to Miller, at the time of the 1985 assignments, Centier's predecessor only had a business relationship with Scheffer, Inc., not the Scheffers individually.

[7] The Scheffers filed a reply brief, claiming:

> The only loan that Bruce and Sybil Scheffer have had with, the only promissory note they have given to, Centier Bank since the time of the assignments as collateral was the residential mortgage debt on their Wexford Road property. They paid off that loan in 2010. They are not obligated on any 'existing or future loans' since 2010. Upon that pay off in 2010, Centier had no right to retain the assignments as collateral.

*Id.* at 255. The Scheffers also argued that the Miller affidavit was inadmissible because Miller had no knowledge of the events and that Exhibit 2 of the Miller affidavit was inadmissible hearsay.

[8] Centier filed a reply noting that the Scheffers appeared to have abandoned their argument that the 1985 assignments related to a 1985 loan and mortgage and that the Scheffers were now arguing that the assignments were somehow related to the 2002 loan and mortgage. Centier also argued that Miller's affidavit was based on his personal knowledge and review of Centier's business records and that it was admissible. Further, Centier argued that Exhibit 2 was admissible.

The trial court granted Centier's cross-motion for summary judgment and denied the Scheffers' motion for summary judgment. The trial court concluded:

> [T]he language of the 2002 contract assigning the life insurance policies to the mortgage loan, submitted by Plaintiffs clearly states that the assignment of the life insurance policies is for 'any existing or future loans.' . . . . Therefore, Centier Bank has properly maintained the assignments of Plaintiffs' life insurance policies to secure other loans between the Plaintiffs individually or as [Scheffer], Inc., that were entered into after the 2002 contract.

*Id.* at 12.[1] The Scheffers now appeal, and Centier cross-appeals.

# Analysis

## I. *Miller Affidavit*

On appeal, the Scheffers argue that the Miller Affidavit was inadmissible. However, the Scheffers' argument on appeal is not cogent. They contend that Miller's affidavit "was not based upon personal knowledge, sought to opine on the mental impressions and motivations of person other than himself, and was parol evidence (at best) contradictory of the language within the four corners of the assignments." Appellants' Br. p. 26. The Scheffers do not specify which statements in the affidavit were not based on Miller's personal knowledge, do not specify which statements opine as to mental impressions or motivations, and do not identify the parol evidence. Indiana Appellate Rule 46(A)(8) provides in part that the argument section of the appellant's brief must "contain

---

[1] The trial court appears to have misstated the designated evidence, as the assignments occurred in 1985, not 2002.

the contentions of the appellant on the issues presented, supported by cogent reasoning," along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts under review. The Scheffers failed to do so and have waived this argument. *See, e.g.*, *Reed v. Reid*, 980 N.E.2d 277, 297 (Ind. 2012) ("Failure to comply with this rule results in waiver of the argument on appeal."). The Scheffers have failed to demonstrate that the trial court erroneously considered the Miller Affidavit.

## II. *Summary Judgment*

[11] The Scheffers also argue that the trial court erred by granting Centier's cross-motion for summary judgment and denying their motion for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56. We liberally construe all designated evidentiary material in a light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. Bradshaw v. Chandler, 916 N.E.2d 163, 166 (Ind. 2009). The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred. Id. Our review of a summary judgment motion is limited to those materials designated to the trial court. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001).

[12] Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. Rice

v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

[13] The Scheffers argue that, pursuant to the language of the assignments, the assignments related only to personal loans and mortgages given to the Scheffers, not corporate loans given to Scheffer, Inc. The Scheffers note that the assignments each provide: "this assignment is for the sole purpose of using the policy as collateral security for existing or future loans made by the assignee [Centier] to the *owner*." App. pp. 80, 81, 83, 84 (emphasis added). According to the Scheffers, they are the owners of the policies, and they do not have any outstanding personal loans with Centier. Thus, the Scheffers argue that Centier should be required to release the assignments of the life insurance policies. Centier counters that there is no evidence of a personal residential loan or mortgage in 1985, that at that time Centier only had a loan relationship with Scheffers, Inc., and that the assignments provided collateral for a business loan, not a residential loan.

[14] The Scheffers designated their own affidavit that provided in part:

> 2. Since 1985 through present time, Bruce A. Scheffer and Sybil Scheffer, respectively, own insurance policies on their respective lives, Policy 916030 and Policy 577523 on the life of Bruce and Policy 916031 and Policy 577524 on the life of Sybil, with United Farm Bureau Family Life Insurance Company, its successors and assigns.

3. Each of us assigned our respective life insurance policy to The First Bank of Whiting for the sole purpose to further collateralize a promissory note and mortgage loan we had on our personal residential real property commonly known as 504 Wexford Road, Valparaiso (mailing), Porter County, Indiana.

App. p. 75.

[15] Centier countered by designating the Miller Affidavit, which provided in part:

4. Centier Bank had a long standing business relationship with Bruce and Sybil Scheffer and their company, [Scheffer, Inc.,] dating before 1985. Various loans and lines of credit were established over the years to assist Plaintiffs in their exclusive ownership, management and operation of [Scheffer, Inc.]. As the business of [Scheffer, Inc.] grew, Bruce and Sybil Scheffer called upon Centier Bank to provide additional loans, lines of credit and letters of credit, all of which assisted Plaintiffs' national and international business relationships in the web auxiliary equipment marketplace.

5. On or about April 1, 2009, representatives of the Plaintiffs and [Scheffer, Inc.,] advised Centier Bank that there were no monies available to service the various loans, lines of credit and credit facilities that had been provided by the bank, such that a default of more than $3.5 million existed. . . .

6. In 1985, the relationship between Plaintiffs and their company [Scheffer, Inc.] was for business purposes only. Centier Bank did not have a residential mortgage loan on 504 Wexford Road, Valparaiso, IN with Bruce and Sybil Scheffer at that time.

*Id.* at 136-37.

[16] Centier correctly notes that the Scheffers designated no documentary evidence of a 1985 personal residential loan between the Scheffers and Centier or its predecessor that could have been connected with the life insurance policy assignments. They also designated no documentary evidence showing that they were the owners of the life insurance policies. However, our supreme court recently clarified that even perfunctory, self-serving affidavits are enough to create a genuine issue of material fact for summary judgment purposes.

[17] In *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014), our supreme court noted that "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." In *Hughley*, a defendant responded to the State's summary judgment motion and designation of evidence in a civil forfeiture action by designating his own affidavit—"albeit a perfunctory and self-serving one—that specifically controverted the State's prima facie case, denying under oath that the cash or car were proceeds of or used in furtherance of drug crimes." *Hughley*, 15 N.E.3d at 1004. Our supreme court concluded that the affidavit was "sufficient, though minimally so, to raise a factual issue to be resolved at trial, and thus to defeat the State's summary-judgment motion." *Id.* The trier of fact was required to "resolve the parties' differing accounts of the truth" and "reconcile the credibility of those two accounts." *Id.* at 1004-05.

[18] The court noted that the "Defendant may very well lose such a credibility contest" and that "the State's circumstantial evidence, though not conclusive, is certainly compelling." *Id.* at 1005. However, summary judgment "may not be

used as a substitute for trial in determining factual disputes," and it "is not appropriate merely because the non-movant appears unlikely to prevail at trial." *Id.* Thus, even though the defendant's designated evidence was thin, it was enough to preclude summary judgment for the State.[2] *Id.*

[19]     That seems to be the case here. The Scheffers have not designated any evidence to contravene Centier's claims beyond what appears to be a self-serving affidavit. They presented no documentation as to the alleged 1985 mortgage and no copies of the life insurance policies showing the owner of the policies. However, given the guidance in *Hughley*, we believe the razor thin affidavits are enough. Should they be? Our supreme court says, "Yes."

[20]     The Scheffers' affidavit, although lacking any documentary support, was enough to create a genuine issue of material fact as to whether the assignments related to a 1985 mortgage on their personal residence rather than loans to their business, Scheffer, Inc. Consequently, summary judgment to Centier was improper.

---

[1]     [2] Our supreme court addressed the concern of an unscrupulous litigant filing a perjurous affidavit and noted that an oath, subject to penalties for perjury, was "an adequate deterrent against false testimony—hence the Rule 56(C) requirement to designate evidence, and not merely rest on unsworn pleadings." *Hughley*, 15 N.E.3d at 1005.

### *III. Cross-Appeal*

On cross-appeal, Centier argues that it is entitled to an award of costs and attorney fees. Centier notes that it requested costs and attorney fees in its cross-motion for summary judgment pursuant to Indiana Code Section 34-52-1-1 but that the trial court did not address the argument. Centier further requests costs and attorney fees pursuant to Indiana Appellate Rule 66(E).

In general, Indiana adheres to the "American Rule" that each party pays for its own attorney fees, absent agreement or statute to the contrary. *Knowledge A-Z, Inc. v. Sentry Ins.*, 891 N.E.2d 581, 585 (Ind. Ct. App. 2008), *trans. denied*. A court may award attorney fees to the prevailing party if the court finds that a party either "brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless" or continued to litigate after its "defense clearly became frivolous, unreasonable, or groundless" or "litigated the action in bad faith." Ind. Code § 34-52-1-1(b). Similarly, on appeal, we "may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Ind. Appellate Rule 66(E). Our discretion "is limited to instances 'when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.'" *Knowledge A-Z*, 891 N.E.2d at 586. Given our resolution of the Scheffers' appeal, we cannot say that Centier is entitled to costs and attorney fees under either Indiana Code Section 34-52-1-1 or Indiana Appellate Rule 66(E).

# Conclusion

The Scheffers failed to demonstrate that the trial court erroneously considered the Miller affidavit. Further, the trial court's grant of summary judgment to Centier was improper because genuine issues of material fact exist. We affirm the trial court's denial of the Scheffers' motion for summary judgment but reverse the trial court's grant of summary judgment to Centier. Further, we cannot say that Centier is entitled to costs or attorney fees at this time. We remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

May, J., and Pyle, J., concur.